**E-Filed 3/12/2010**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| DELICIA NIAMI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FEDERAL EXPRESS PRINT SERVICES, INC., PAUL LATTER and Does 1 through 50,<br><br>　　　　Defendant. | Case Number C 09-4384 JF<br><br>ORDER[1] GRANTING PLAINTIFF'S MOTION TO REMAND AND TERMINATING AS MOOT DEFENDANT"S MOTION TO COMPEL ARBITRATION<br><br>[re: document nos. 18, 25] |

Plaintiff Delicia Niami ("Niami") moves to remand the instant action to the Santa Clara Superior Court. Defendants FedEx Office Print Services, Inc. ("FedEx Office") and Paul Latter ("Latter") (collectively "Defendants") oppose Niami's motion and move to compel arbitration. The Court heard oral argument on March 5, 2010 and has considered the moving and responding papers. For the reasons set forth below, the motion for remand will be granted and the motion to compel arbitration will be terminated as moot based on the absence of federal jurisdiction.

---

[1] This disposition is not designated for publication in the official reports.

## I. BACKGROUND

In June 2009, Niami filed a complaint in the Santa Clara Superior Court against FedEx Office, a Texas corporation with its principal place of business in Texas, and Paul Latter, a California resident, alleging violations of the California Fair Employment and Housing Act ("FEHA") for discrimination, retaliation and harassment, and for breach of contract. Notice of Removal, 1:19-22, Ex. A ("Complaint").

In early 2002, Niami began her employment for FedEx Office in one of its San Jose stores. Compl.¶ 9. She was open about her sexual orientation as a gay woman and about the existence of her female partner. *Id.* ¶ 10. Niami quickly was promoted to an account manager position based on her work performance. *Id.* Defendant Latter became Niami's manager during this period. *Id.* Niami alleges that after her initial promotion she twice was denied a promotion to Major Account Manager ("MAM"), based at least in part on her sexual orientation. *Id.* ¶ 11. She alleges that Latter made numerous jokes and comments about gay people. *Id.* ¶ 12. In early 2005, Latter allegedly made comments suggesting that Niami's sexual orientation might affect her ability to get promoted. *Id.* ¶ 14 (Latter told Niami she had to be careful because "Craig Hath (Regional V.P. of Sales) knows you're a lesbian" and "[t]his is a southern company, and the people who run it are conservative."). Niami also alleges that in 2005, Latter made disparaging remarks relating to Niami's sexual orientation and stated that she should dress and look more feminine. *Id.* ¶¶ 15-16.

In October 2005, Latter left his position as Niami's manager, and shortly thereafter Niami was promoted to MAM. *Id.* ¶¶ 17-18. Niami subsequently received recognition as the top MAM in the country, although Fed Ex Office allegedly altered the manner in which it awarded Niami this honor, diminishing the award and its fanfare, in comparison to the preceding years. *Id.* ¶¶ 22-24. Twice during the course of her employment, FedEx Office awarded Niami a trip (to San Diego in 2004 and Hawaii in 2006) based on her performance. However, as a result of Latter's actions and Niami's subsequent understanding of FedEx Office's management, Niami felt that she had to hide the existence of her female partner from other company members during these excursions. *Id.* ¶¶ 14, 21. Niami also discovered that she was paid 2% less than her predecessor

2

Case No. C 09-4384 JF
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND TERMINATING AS MOOT DEFENDANTS'
MOTION TO COMPEL ARBITRATION
(JFEX2)

MAM. *Id.* ¶ 23.

In October 2006, Latter became the manager over all Business Development Advisors ("BDAs") within FedEx Office. The Vice President of Sales informed Niami and others of an impending reorganization, and encouraged Niami to apply for multiple positions. Niami applied for and made clear to Latter and to the Vice President that her first choice was the BDA position for the San Francisco area. *Id.* ¶¶ 26-27. Based upon FedEx's announced criteria, Niami allegedly was "the only applicant for the San Francisco BDA position who met all four job qualifications and who had specific experience in Convention Sales in the San Francisco area." *Id.* ¶ 28. Nonetheless, Defendants offered nine of the available BDA positions to the nine other former MAMs, and the tenth BDA position to Russ Hearl, a male employee who allegedly lacked experience in conventions, did not meet the job criteria, and was not a former MAM. *Id.* ¶¶ 29-30. Niami wrote to the Human Resources Manager of FedEx Office protesting the BDA hiring decision and outlining her accomplishments and the discrimination she had experienced. She did not receive a response to her letter. *Id.* ¶¶ 31-32. Even after Russ Hearl turned down the offer for the tenth BDA position, Defendants offered it to another male employee who similarly lacked experience and tenure. *Id.* ¶ 33.

Niami protested the promotions of the lesser-qualified male employees. Latter and the Vice President of Sales told her that she could accept the position of Corporate Account Executive ("CAE"), which paid $20,000 less than the BDA position, and which she refused. *Id.* ¶¶ 34-35. Latter then told Niami that she could either accept the CAE position with a retention bonus or accept termination with severance. *Id.* Niami reviewed the offers and found that the bonus was $5,000 less than that offered to other employees, and that the severance package required her to release all of her claims of discrimination, harassment, and retaliation. *Id.* ¶¶ 36-37. Niami refused to accept either offer and was terminated on November 30, 2006. *Id.* ¶ 38. During her employment with FedEx Office, Niami had signed an Arbitration Agreement providing that employee-company disputes not resolved by internal processes would be submitted to final and binding arbitration. Defs.' Mot. To Compel, Carter Decl., Ex. A ("Agreement").

3

Niami alleges that in 2006, she filed a complaint against Latter and FedEx Office with the California Department of Fair Employment and Housing ("DFEH").[2] Compl. ¶ 39; Pl.'s Am. Mot. For Remand 3:9-11. DFEH issued her right to sue letters in June 2008. Compl. ¶ 40. In June 2009, Niami filed her state court complaint. On September 17, 2009, FedEx Office timely removed the action to this Court. Latter did not join in the removal. Notice of Removal, 1:3-8.

Niami argues that removal was improper both because Defendant Latter did not join the removal notice and because Latter's presence defeats diversity jurisdiction. Defendants argue that the removal was proper because Latter is a "sham" defendant against whom Niami cannot sustain a cause of action. Defendants contend that the motion for remand should be denied and that their motion to compel arbitration should be granted. Because the Court concludes that Latter is not a sham defendant, it will grant the motion for remand. In the absence of federal jurisdiction, the Court will not consider the motion to compel arbitration.[3]

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), often referred to as "the removal statute," a defendant may remove an action to federal court if the plaintiff could have filed the action in federal court initially. 28 U.S.C. § 1441(a); *see also Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1393 (9th Cir. 1988). A party may file an action in federal court if there is diversity of citizenship among the parties or if the action raises a substantial federal question. *Ethridge*, 861 F.2d at 1393. The party invoking the removal statute bears the burden of establishing federal jurisdiction. *Id*. The removal statute is strictly construed against removal. *Id*. The matter therefore should be remanded if there is any doubt as to the existence of federal jurisdiction. *Gaus v. Miles, Inc.*, 980

---

[2] The parties provide different dates for Niami's DFEH administrative filing. Niami states that the complaint was filed in 2006. Compl.¶ 39. Defendants assert that the complaint was filed with DFEH on June 14, 2007; they have submitted a "true and correct copy" of the DFEH complaint, dated June 14, 2007, as received by FedEx Office. Notice of Removal, Carter Decl., Ex. A.

[3] Defendants requested that the Court hear the motion to compel arbitration first on the ground that Plaintiff failed to re-notice her motion for remand properly. Nonetheless, the Court first must determine whether it has subject matter jurisdiction

4

F.2d 564, 566 (9th Cir. 1992).

The Court "may disregard a non-diverse party named in the state court complaint and retain federal jurisdiction if the non-diverse party is joined as a sham or if the joinder is fraudulent." *Plute v. Roadway Package System, Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001).[4] Joinder of a non-diverse party is fraudulent "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The Court will deem a party to have been joined fraudulently only after resolving "all disputed questions of fact and ambiguities in the controlling state law ... in the plaintiff's favor" and finding "the plaintiff could not possibly recover against the party whose joinder is questioned." *Soo v. United Parcel Service, Inc.*, 73 F. Supp. 2d 1126, 1128 (N.D. Cal.,1999) (citations omitted). Thus, "[t]here is a strong presumption against a finding of fraudulent joinder, and the removing defendant bears a heavy burden of persuasion to justify such a finding." *Adams v. FedEx Corp.*, 2005 WL 3371067, *3 (N.D. Cal. 2005 Dec. 12, 2005).

### III. DISCUSSION

A.  Removal

FedEx Office is a Texas corporation with its principal place of business in Texas. For the purposes of federal diversity jurisdiction, FedEx Office is a citizen of Texas. *See* 28 U.S.C. § 1332(c). Niami is a citizen of California. FedEx contends that removal is proper because this civil action is between citizens of two different states and involves an amount in controversy greater than $75,000. Notice of Removal ¶¶ 4-5. FedEx argues that Latter, a California citizen, is a "sham" defendant "added simply to defeat diversity jurisdiction." *Id.* ¶ 6.

A court need not consider the non-joinder of a party in removal if that party was named solely to defeat diversity. *Farias v. Bexar County Bd. of Trustees*, 925 F.2d 866, 871 (5th

---

[4] "Fraudulent joinder" is a term of art referring to the plaintiff's obvious failure to state a cause of action against a resident defendant. *See McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

5

Cir.1991). Even if the non-diverse party joined, a district court may retain federal jurisdiction if the presence of the party is a "sham" or the result of fraudulent joinder. *Princess Cruises, Inc.*, 236 F.3d at 1067. The burden to defeat the strong presumption against a finding of fraudulent joinder falls upon Defendants. *See id.*

Whether the inclusion of Latter in Niami's state court complaint constituted fraudulent joinder turns upon whether Niami has failed to state a claim against Latter and that failure is obvious under settled state law. *See McCabe*, 811 F.2d at 1339. Niami's sole claim against Latter is for harassment under the FEHA. Compl. ¶¶ 50-52. An employee claiming violations of the FEHA must file an administrative complaint with the DFEH within one year "from the date upon which the alleged unlawful practice ... occurred." Cal. Gov. Code § 12960(d). The timely filing of this complaint is a "prerequisite to the bringing of a civil action for damages under the FEHA" *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996).

### (1) Harassment under the FEHA

Defendants contend that Niami can have no valid claim against Latter because any harassment attributed to Latter in the complaint took place before October 2005 and thus is time-barred. Notice of Removal ¶ 7. As noted above, Defendants contend that Niami did not file her administrative complaint until June 2007.[5] *Id.* However, Niami also alleges that Latter's conduct toward her in November 2006 constitutes harassment under the FEHA. Pl.'s Am. Mot. For Remand 3:12-17. This alleged conduct includes Latter's direct involvement in personnel decisions leading to Niami's termination in November 2006. *Id.* Defendants argue that the actions attributed to Latter within the limitations period, relating to the BDA hiring decisions and to Niami's ultimate termination, do not provide any basis for a harassment claim against Latter

---

[5] In assessing a possible fraudulent joinder, "the courts must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" *Plute*, 141 F.Supp.2d at 1008 (citation omitted). The Court may look beyond the pleadings and consider affidavits and other evidence. *Id.* Defendants' evidence suggests strongly that Niami filed her administrative complaint on June 14, 2007. *Compare* Notice of Removal, Carter Decl., Ex. A. *with* Compl.¶ 39.

6
Case No. C 09-4384 JF
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND TERMINATING AS MOOT DEFENDANTS'
MOTION TO COMPEL ARBITRATION
(JFEX2)

individually, although they might support a discrimination claim against FedEx Office.[6] Notice of Removal ¶ 7; Def.'s Opp'n to Mot. For Remand 3:15-24.

In the recent case of *Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009), the California Supreme Court addressed whether personnel management decisions may be relied upon as evidence of harassment under the FEHA, clarifying its previous discussion in *Reno v. Baird*, 18 Cal. 4th 640 (1998) of the distinction between harassment and discrimination. In *Roby*, the court held that "acts of discrimination can provide evidentiary support for a harassment claim." *Id.* at 709. Personnel decisions or "official employment actions done in furtherance of a supervisor's managerial role" thus should not be separated out in a harassment claim, where those actions "can also have a secondary effect of communicating a hostile message." *Id.*

*Roby* involved an employee who developed a medical condition that resulted in panic attacks, causing frequent, unexpected absences from work. *Id.* at 694. Roby suffered from body odor and sores on her arms, both caused by the medication she took to control the panic attacks. *Id.* at 695. Roby's supervisor made negative comments about her and her condition, spoke about her in a demeaning manner, and subjected her to differential treatment in front of and in comparison to the other employees. *Id.* Based on the company's attendance policy, Roby's multiple absences resulted in her termination, even though her supervisor was aware of Roby's medical condition. *Id.* at 696. The jury awarded Roby substantial damages, including damages against her supervisor and the company for harassment under the FEHA. *Id.* at 698.

Interpreting the statement in *Reno v. Baird* that "commonly necessary personnel management actions ... do not come within the meaning of harassment," the state court of appeal had removed any type of "personnel action" from its review of the jury's harassment verdict. *Id.* at 700 (citing *Reno*, 18 Cal. 4th 646-47). The California Supreme Court reversed, holding that

---

[6] "In the FEHA, the terms 'discriminate' and 'harass' appear in separate provisions and define distinct wrongs." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 705 (2009) (citations omitted). *See* Cal. Gov. Code § 12940(a) (making unlawful employer action that discriminates "against the person in compensation or in terms, conditions, or privileges of employment") and § 12940(j)(1) (making unlawful employer action that harasses an employee).

7

the "critical inquiry" is "whether the evidence indicates violations of both FEHA prohibitions," where "discrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." *See id.* at 707-09. Where both forms of FEHA violations occur, "nothing prevents a plaintiff from proving these two violations with the same (or overlapping) evidentiary presentations." *Id.* at 709. The court illustrated its point by citing *Miller v. Dep't of Corrections*, in which a warden's demonstrated favoritism to subordinate female employees with whom he had sexual relations created an "offensive, sex-biased message" that served as a basis for a FEHA harassment claim. *Id.* at 708 (citing *Miller*, 36 Cal. 4th 446 (2005)). Yet in *Miller*, it was the "official employment actions" taken by the employer that "constituted the evidentiary basis of the harassment cause of action, because the supervisor used those official actions as his means of conveying his offensive message." *Id.*

In the instant action, Niami argues that based on the analysis in *Roby* and *Miller*, the "personnel decisions to which Defendant Latter contributed make him liable as a harasser." Pl.'s Reply in Support of Mot. For Remand 2:20-22.[7] In particular, Niami points out that Latter's comments threatened her with employment consequences if she did not engage in sexually conforming behavior. Pl.'s Am. Mot. For Remand 3:12-17. According to Niami, Latter's "final form of harassment" was to carry out that threat through her termination. *Id.* In response, Defendants contend that Niami fails to allege any connection between Latter's comments in 2005 and his official actions on behalf of FedEx Office in 2006. Def.'s Opp'n to Mot. For Remand 5:8-16. Because Niami had not worked for Latter for more than a year prior to the BDA and CAE job offers in 2006, Defendants argue that the offers "cannot reasonably be construed as communicating an offensive message" to Niami. *Id.* Finally, even if the offers and termination could be construed as harassment, Defendants claim that Niami has not alleged conduct

---

[7] Defendants object to Niami's reply memorandum on the ground that it was filed late, and note that Niami failed to cite *Roby* in her amended motion for remand, even though the motion was filed two months after publication of the *Roby* decision. In its discretion and in the absence of any practical prejudice to Defendants, the Court has considered the memorandum.

8

sufficiently severe or pervasive so as to establish a prima facie case of harassment under the FEHA. *Id.* at 6:6-17.

The Court concludes that the personnel decisions made by Latter and FedEx Office during Niami's final year of employment, including their decision not to promote Niami to the BDA position for which she was fully qualified and terminating her for refusing to accept a lower paying position, at least arguably can be construed as official actions that conveyed an offensive message to Niami. *See Roby* at 710. Prior to October 2005, when Latter left his position as Niami's manager, Latter is alleged to have made numerous comments, jokes, and directly demeaning statements relating to Niami's sexual orientation and appearance. Niami alleges she twice was denied a promotion by Latter "based, at least in part, on her sexual orientation." Compl. ¶ 11. Niami also alleges that Latter made comments that warned her about how upper management would react to the fact that she was a lesbian. *Id.* ¶¶ 14, 16. Latter's comments and other actions taken by FedEx arguably created a hostile work environment in which Niami "did not feel safe about introducing her partner to others" and felt that she had "to hide their lesbian relationship." *See id.* ¶ 21. Approximately one year later, although he had not supervised Niami for over a year, Latter allegedly took action that conveyed his offensive message more strongly then ever, by denying Niami the position that she sought, and instead offering her two unpalatable alternatives.

The fact that the 2006 decisions were "official employment actions" and took place a year after the previous, allegedly harassing behavior, does not preclude them from having had "a secondary effect of communicating a hostile message," since they reinforced Latter's previous representations to Niami that her being gay would be a barrier to being promoted. *See Roby* at 709 (citing *Miller* for the proposition that "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message.") Although Defendants are correct that the conduct attributed to Latter between 2002-2005 is time-barred and may not in itself be considered a basis for Niami's individual harassment claim against Latter, it may be considered here in that such conduct might support Niami's FEHA harassment claim.

9

1 **(2) Severe or Pervasive Conduct**

Defendants argue that even if Latter's official personnel decisions conveyed a hostile message, Niami still fails to state a valid claim for harassment under the FEHA, because the conduct alleged is not sufficiently severe or pervasive to "alter the conditions of her employment and create an abusive working environment."[8] Def.'s Opp'n to Mot. For Remand 6:6-17 (citing *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1989)). California courts look to several factors in determining whether conduct is so severe or pervasive to violate the FEHA, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Miller*, 36 Cal. 4th at 462. The severity of conduct "should not be viewed too narrowly" and must be considered in light of "the social context in which particular behavior occurs and is experienced by its target." *Lyle v. Warner Bros. Television Prod.*, 38 Cal. 4th 264, 283 (2006) (quoting *Oncole v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81-82 (1998)). With respect to pervasiveness, courts generally require plaintiff to show "a concerted pattern of harassment of a repeated, routine or a generalized nature," beyond "occasional, isolated, or sporadic" incidents. *Id.*

In *Roby*, the court held that official actions may convey a hostile message "when the actions establish a widespread pattern of bias." *Roby*, 47 Cal. 4th at 709. The court concluded that the evidence supporting Roby's discrimination and harassment claims was "sufficient to allow the jury to conclude that the hostility was pervasive and effectively changed the conditions of Roby's employment." *Id.* at 710 (citing *Warner Bros.*, 38 Cal. 4th at 278-279). Similarly, in *Miller*, the culture of sexual favoritism in the workplace was "sufficiently widespread" to establish a prima facie case of harassment under the FEHA, given the "demeaning message []

---

[8] California courts have adopted the Supreme Court's analysis of harassment under Title VII of the Civil Rights Act of 1964. *See, e.g.*, *Miller*, 36 Cal. 4th at 462; *Lyle v. Warner Brothers Television Productions*, 38 Cal. 4th 264, 282-83 (2006). In order to state a claim for sexual harassment, the plaintiff must allege conduct "sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'" *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986).

Case No. C 09-4384 JF
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND TERMINATING AS MOOT DEFENDANTS'
MOTION TO COMPEL ARBITRATION
(JFEX2)

conveyed to female employees that ... the way required for women to get ahead in the workplace [was] to engage in sexual conduct with their supervisors...." *Miller*, 36 Cal. 4th at 450. In contrast, Defendants argue that those allegations not time-barred (the offer of a lower paying position or termination with severance) are insufficient to establish severe or pervasive harassment. Niami argues that Latter's personnel actions were linked to a message that Niami was required to engage in sexually conforming behavior in order to either gain a specified employment benefit or avoid loss of her employment. Pl.'s Mot. For Remand 4:6-23.

Although Niami ultimately may fail to prove her claim against Latter at trial, the Court concludes that Defendants have not met their burden of showing that Niami could not possibly recover against Latter, or that Niami's purported failure to state a claim at this stage is "obvious according to the settled rules of the state." *See, e.g. Soo*, 73 F. Supp. 2d at 1129 (holding that plaintiff is not a "sham" defendant "because UPS has not demonstrated that it is a 'settled rule of the state' that supervisors cannot be held personally liable for retaliatory employment decisions"). Under *Roby*, Latter's official employment actions arguably may be considered in connection with the harassment claim against him.

Accordingly, the Court concludes that Latter is not a sham defendant. Because complete diversity of citizenship does not exist, removal was improper.

B.   Agreement to Arbitrate

Defendants' motion to compel arbitration is moot based on the absence of federal jurisdiction.

**IV. ORDER**

Plaintiff's motion for remand is GRANTED. The action is hereby remanded to the Santa Clara Superior Court. Defendants' motion to compel arbitration is terminated as moot. The Clerk shall transmit the file to the Santa Clara Superior Court.

DATED:   March 12, 2010

_____
JEREMY FOGEL
United States District Judge

11

Case No. C 09-4384 JF
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND TERMINATING AS MOOT DEFENDANTS' MOTION TO COMPEL ARBITRATION
(JFEX2)